UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSETTUS L. WEEKS,

    Plaintiff,

vs.

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF COMMUNITY
HEALTH,

    Defendant.

_____/

Civil Action No. 12-CV-11368

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 13]. Plaintiff has filed a response in opposition and defendant has filed a reply. On July 25, 2013, the Court heard oral argument and took the matter under advisement. For the reasons state below, the Court shall grant the motion.

**Background**

This is an employment discrimination suit in which plaintiff, Rosettus L. Weeks, alleges he was denied a promotion on the basis of his race and national origin, and in retaliation for filing an EEOC complaint and lawsuit in 2008 against his employer, defendant Michigan Department of Community Health. Plaintiff is an African-American born in Liberia and has worked for the State of Michigan since 1984. Plaintiff's previous lawsuit, which he commenced in December 2008, was also an employment discrimination claim. In that case, plaintiff alleged that defendant discriminated and retaliated against him by reprimanding and removing him from his position as hospital director at Walter P. Reuther Psychiatric Hospital ("Walter Reuther")

1

following a six-month investigation into patient abuse allegations. *See Weeks v. Mich. Dep't of Cmty. Health*, No. 08-15124 (E.D. Mich.) (Hood, J.). In that case, the jury found that defendant did not retaliate against plaintiff or discriminate against him based on his national origin or race. Judgment was entered for defendant on March 2, 2011.

The history of the last lawsuit is relevant to the present case. In 2005, plaintiff filed a Technical Complaint with the Civil Service Commission alleging that defendant unlawfully promoted Cynthia Kelley to the position of State Bureau Administrator (a Level 18 position), a position for which plaintiff had applied and for which Kelley did not meet the minimum requirements. That dispute was resolved in 2006, when plaintiff and defendant reached a settlement agreement whereby plaintiff was appointed hospital director of Walter Reuther and Kelley was removed from her position. In May 2008, Kelley was again placed in the position of State Bureau Administrator, having achieved the requisite managerial experience she had previously lacked. Kelley is the direct supervisor of all hospital directors and some administrative staff in Lansing, including plaintiff. Later in 2008, plaintiff was removed from his position as hospital director of Walter Reuther and reprimanded for interfering with an investigation into patient abuse at the hospital. Plaintiff was reassigned to the position of Division Director of Reimbursement and Revenue Enhancement for the Michigan Department of Community Health, which is the position he currently holds. Plaintiff filed a complaint against defendant with the EEOC alleging racial and national origin discrimination and retaliation for reassigning him and putting Kelley into the State Bureau Administrator position, instead of hiring plaintiff for that job. Plaintiff then filed suit and lost as indicated above. The jury found no causal connection between plaintiff's protected activities (i.e., his internal complaints

2

regarding Kelley's promotion and his EEOC complaint) and plaintiff's reassignment and reprimand or Kelley being given the State Bureau Administrator position.

The essence of plaintiff's claim in the present case is that defendant wrongfully denied his application in February 2010 to become the director of the Center for Forensic Psychiatry ("CFP"). Plaintiff claims he was qualified for the position (having previously served as the director of two of defendant's hospitals) but that defendant changed the official job description by attaching a so-called Selective Position Requirement ("SPR"),[1] which required candidates to have two years of experience as a practicing clinician. Plaintiff's application was rejected because he does not have such experience or the educational level of the clinicians listed in the SPR. Plaintiff contends in the present case is that defendant concocted the SPR specifically in order to prevent him from qualifying for the CFP directorship, and that defendant did so in retaliation for his past complaints and lawsuit.

The history of the SPR is important to this case. In 2008, the former Director of the Mental Health and Substance Abuse Administration, Michael Head, sought to implement heightened hiring standards for hospital directors in order to maintain the accreditation of the hospitals under defendant's control in light of patient abuse scandals, such as one that occurred under plaintiff's directorship of Walter Reuther.[2] Head Dep. at 12-13; Collins[3] Dep. at 20. In

---

[1] An SPR is a means for any state department or agency to narrow the qualifications of the applicant pool for any given position. Each SPR is drafted by the hiring department or agency and then submitted to the Civil Service Commission for approval. *See* Def.'s Ex. 11 at 6-7 (Aug. 26, 2010, Technical Review Decision).

[2] While the specifics of the alleged abuse are unclear from the record, plaintiff was accused and eventually reprimanded for impeding the investigation of the patient abuse scandal and for proclaiming that employees' rights were more important than patients' rights during a certification inspection. *See Weeks v. Mich. Dep't of Cmty. Health*, No. 08-15124, 2010 WL 3906894, at *1 (E. D. Mich. Sept. 30, 2010).

3

preparation for an opening for CFP Director, Head sought to increase the required qualifications for the position by attaching an SPR to the job posting.[4] While Level 17 and Level 18 positions generally require only a bachelor's degree, this SPR required "[t]wo years of clinical experience as a Psychiatrist, Psychologist, or Physician," which would require either an M.D. or PhD. *See* Pl.'s Ex. 20 (Senior Executive Hospital/Center Director Position); Robinson[5] Dep. at 10-12. SPRs were typically used to narrow educational requirements, such as requiring a bachelor's degree in a specific major area rather than requiring more advanced educational credentials. Robinson Dep. at 15-16.

At Head's direction, the SPR request was submitted by defendant's employee, Tina Smith, on December 10, 2009, for approval by the Civil Service Commission. Pl.'s Ex. 15 (Civil Service Approval of SPR). The Civil Service Commission is independent of defendant, sharing neither employees nor supervisors. Most requests are reviewed and approved or rejected by a Human Resource Analyst. However, due to the unusual nature of this SPR request, analyst Jeanette Robinson first sought approval from her supervisor, Susan Cooper, the Human Resources Manager in the Office of Classifications, Selections, and Compensation. Robinson Dep. at 15. Cooper then brought the SPR request to her supervisor, Matt Fedorchuk, for further review. Cooper Dep. at 15. Fedorchuk informed Cooper that their office had previously approved SPRs requiring advanced degrees beyond the state position level in question. *Id.* at 18.

---

[3] Joseph Collins is an employee of the Civil Service Commission and serves as Human Resources Director for the Michigan Department of Community Health. He is responsible for appointments, labor relations, and position classifications. Collins Dep. at 8-9.

[4] In this capacity, Head served as Kelley's supervisor during the SPR approval process. Kelley did not prepare the SPR, but she did approve the SPR and issued a memo justifying its use in December 7, 2009. Pl.'s Ex. 25, (Dec. 7, 2009, Memo from Cynthia Kelley).

[5] Jeanette Robinson is the Human Resource Analyst who processed the SPR request. Robinson Dep. at 6.

4

After conferring with Fedorchuk, Cooper approved[6] the SPR for the CFP Director position on December 14, 2009. Pl.'s Ex. 15. Head was responsible for changing the CFP Director position description to include the clinical experience requirement eventually found in the SPR. Head Dep. at 12. The SPR was also approved by Kelley, as she is the direct supervisor of all of defendant's hospital directors. Kelley Dep. at 41.

On January 15, 2010, the CFP Director opening was posted internally within defendant's department as a Level 17 State Administrator position. Def.'s Ex. 7 (Job Posting). On February 2, 2010, plaintiff applied for the position and although he had submitted his application late, defendant decided to review it. Nevertheless, defendant eventually decided to hire Carol Holden, PhD for the position on February 22, 2010. Def.'s Ex. 8.

On February 18, 2010, plaintiff filed a grievance with the Civil Service Commission Office of Technical Complaints, alleging that the selection process for CFP Director was designed to exclude him from consideration for the position. Plaintiff requested that the SPR be revoked and that the appointment process be set aside. On March 12, 2010, plaintiff's grievance was denied for lack of standing; however, plaintiff subsequently appealed to the Employment Relations Board ("ERB"). On July 1, 2010, the ERB found that the SPR for the CFP Director position was "improperly approved" in violation of Civil Service Regulation 4.01, which at the time forbade SPRs to require a more advanced degree than the state position level required, and remanded the case to a Technical Review Officer ("TRO") to determine if the entire selection

---

[6] Cooper and the Civil Service Commission collectively justified validating the SPR by analogizing to previous SPRs requiring law degrees for Level 17 general counsel positions that, although technically in violation of Civil Service Regulation 4.01, had been approved. Civil Service Regulation 4.01 has since been replaced to allow SPRs to require more advanced degrees. Previously, SPRs were only allowed to "narrow" educational requirements, such as selecting for a specific bachelor's degree or a certain number of credit hours in a discipline. *See* Pl.'s Ex. 26 (Civil Service Regulation 4.01 effective June 26, 2011).

process should be set aside. On August 26, 2010, the TRO found that although the SPR violated Regulation 4.01, defendant had legitimate reasons for preferring a candidate with clinical experience for CFP Director. Def.'s Ex. 11. In addition, the TRO found that Holden met the minimum requirements of the position and that plaintiff had failed to demonstrate the SPR was requested or approved for the purpose of excluding him from the position. *Id.* Therefore, while the SPR was invalidated and not used in future hospital director postings, the appointment of Holden to the CFP Director was left intact.

Plaintiff challenges defendant's claim that the SPR was part of a departmental policy to require a clinical background for hospital directors by pointing to the hiring of Richard Young as hospital director of Walter Reuther on February 19, 2009. Pl.'s Dep. at 13. Young has a bachelor's degree in political science, a master's in hospital administration, and work experience as a hospital director, but no clinical experience as a psychiatrist, psychologist, or physician. Collins, as Director of Human Resources, was involved in the hiring of Young and indicates this was a temporary emergency appointment. Collins expected the position would be posted for a traditional hiring process within 60 days of Young's appointment, thereby temporarily excusing the Walter Reuther position from Head's policy of having hospital directors run by clinicians. Collins Dep. at 12-13, 37.

Plaintiff claims that defendant established the SPR for the CFP Director position to prevent him from qualifying for the position. Plaintiff also alleges that defendant knew that he would apply for the position and that the decision to include the SPR was a means of discriminating against him based on his race and national origin and in retaliation for his previous lawsuit against defendant. Complaint ¶¶ 24, 28. Plaintiff points to his two stints as hospital director as evidence that absent the SPR he would have been the preferred candidate.

6

On January 3, 2012, plaintiff received a right to sue letter from the EEOC. Def.'s Ex. 13. Plaintiff then initiated the present action on March 26, 2012.

**Legal Standards**

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See Anderson*, 477 U.S. at 248-20; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of facts exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990).

**Defendant's Motion for Summary Judgment**

Defendant seeks summary judgment on both of plaintiff's claims. Defendant argues that summary judgment is proper on the discrimination claim because (1) plaintiff has offered no evidence, direct or indirect, of racial and national origin discrimination, (2) plaintiff did not suffer a materially adverse employment action and (3) plaintiff was not treated differently than similarly situated others outside of the protected class. As to plaintiff's retaliation claim, defendant argues that (1) plaintiff did not suffer a materially adverse employment action and (2)

plaintiff is unable to demonstrate a causal connection between his protected activity and the purported adverse employment decision.

**Plaintiff's Race and National Origin Discrimination Claim**

Plaintiff may prove his discrimination claim by relying upon either direct or circumstantial evidence. Plaintiff concedes he has no direct evidence of racist comments or a pattern of discrimination in defendant's appointment process. Weeks Dep. 72-72, 78-79. Therefore, plaintiff's claim must be proved with circumstantial evidence and assessed under the *McDonnell-Douglas* burden-shifting framework. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Under that framework, plaintiff must first state a prima facie case of discrimination. To do so he must show that

> (1) he . . . is a member of a protected class; (2) he . . . is qualified for the position; (3) he . . . suffered an adverse employment action; and (4) the circumstances indicate that race or sex played a role in the adverse employment action or that plaintiff was treated differently than those outside the protected class.

*Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 915-16 (6th Cir. 2013). If plaintiff establishes a prima facie case, defendant must provide a legitimate, nondiscriminatory reason for the adverse employment decision. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff must then attempt to demonstrate that defendant's proffered reason is pretextual by showing that defendant's explanation "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Despite the shifting burden of production, at all times plaintiff retains the "ultimate burden of persuading the trier of fact." *White*, 533 F.3d at 392.

There is no dispute that plaintiff is an African-American from Liberia, satisfying the first element. Nor is there any dispute about plaintiff's actual qualifications or that his bachelor's and master's degrees qualify him for a standard Level 17 position.[7] In addition, plaintiff's combined eight years of experience as a hospital director satisfy the two year managerial experience requirement for the CFP Director position.

As to the third element, the parties disagree as to whether plaintiff experienced an adverse employment action. Failure to promote a qualified candidate may constitute an adverse employment action under Title VII. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000); *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Evidence that a position is a promotion includes increase in salary, changed responsibilities, a more distinguished title, and additional benefits. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004). Defendant characterizes the CFP Director position as a lateral transfer and cites authority for the proposition that such a transfer does not constitute an adverse employment action. *See Momah v. Dominguez*, 239 F. App'x 114, 123 (6th Cir. 2007). Plaintiff characterizes the position as a promotion, citing the increased supervisory responsibilities, prestige, and salary[8] the CFP Director position offered. Pl.'s Br. at 8-9. The CFP Director position did offer the possibility of a raise and it appears to have greater responsibilities and prestige. Therefore, the Court agrees with plaintiff that he experienced an adverse employment action when defendant hired another candidate to be CFP Director.

---

[7] A Level 17 Facility Director position requires a bachelor's degree in any major and two years of experience as a professional manager or equivalent experience. Pl.'s Ex. 16.

[8] Plaintiff concedes that the change in salary occurred only after the CFP Director position was reclassified from a Level 17 to a Level 18 shortly after Holden was hired, resulting in a $4,000 salary increase from $114,501 to $118,501 annually. Plaintiff believes the CFP Director position therefore included the additional benefit of likely promotion to Level 18.

9

The final element of a prima facie case is causation: plaintiff must show that his race or national origin was a likely factor motivating the employment decision or that similarly situated others outside of the protected class were treated differently. *See Martinez*, 703 F.3d at 915-16; *Peltier v. U.S.*, 388 F.3d 984, 987 (6th Cir. 2004). Because Carol Holden is Caucasian and therefore outside of plaintiff's protected class, plaintiff must prove that he and Holden are "similarly situated in all respects." *Peltier*, 388 F.3d at 987 (internal quotations omitted). Plaintiff has not shown that his application, credentials, and experience are sufficiently similar to Holden's for the two to be considered "similarly situated in all respects." Holden has a PhD in Psychology, while plaintiff has an M.B.A. Holden has 23 years of clinical experience, while plaintiff has none. At the time she was hired, Holden had been working for a year as the acting director of CFP, which gave her a track record in the actual position in question. Additionally, when plaintiff was last employed as a hospital director, he was involved in a patient abuse scandal which, according to Head, jeopardized that hospital's accreditation. In short, Holden had objectively superior qualifications as compared to plaintiff, and therefore the two are not similarly situated.

As plaintiff cannot show that he was passed over in favor of a similarly situated co-worker, and there being no direct evidence of racial animus or discrimination, he cannot satisfy the causation element of the discrimination claim. Therefore, plaintiff has not presented a prima facie case of race and national origin discrimination.

Even if plaintiff had presented a prima facie discrimination case, defendant has provided legitimate, nondiscriminatory reasons for hiring Holden, which plaintiff has failed to impeach. As noted above, defendant claims that the requirement for hospital directors to have clinical experience as a psychiatrist, psychologist, or physician was part of a department-wide policy,

which was later abandoned, initiated by Department Director Head in 2008, who retired in 2011. Def.'s Reply Br. at 3-4; Head Dep. at 6, 12. Plaintiff challenges this rationale as pretextual, citing the hiring of Richard Young as the hospital director of Walter Reuther in February 2009 and the 2012 promotion of Holden to a Level 18 position, which did not include the SPR's clinical experience requirements. Pl.'s Ex. 4, 20. Young's hiring does not help plaintiff because Young was hired ten months before the SPR was approved and he was appointed on a temporary, emergency basis. Holden's promotion to Level 18 is also irrelevant because it occurred after Head's retirement and after the invalidation of the SPR. Therefore, plaintiff has not shown that the SPR was pretextual and that defendant in fact discriminated against plaintiff based on his race or national origin.

**Plaintiff's Retaliation Claim**

Plaintiff's retaliation claim, absent direct evidence, is subject to the same *McDonnell-Douglas* burden shifting framework as his discrimination claim. Plaintiff must first establish a prima facie case of retaliation. To state a prima facie case of retaliation under Title VII, plaintiff must show:

> (1) [he] engaged in activity protected by Title VII, (2) this exercise of protected rights was known to the employer; (3) the employer thereafter took adverse employment action against the employee, or the employee was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007). If plaintiff states a prima facie case, defendant must offer a legitimate, nondiscriminatory reason for the allegedly retaliatory conduct. Plaintiff must then attempt to show that the stated reason is pretextual.

11

As to the first two elements, there is no dispute that plaintiff engaged in protected activity by filing the EEOC complaint about Kelley's 2008 rehiring and then bringing a lawsuit against defendant, which was pending from December 2008 until March 2011. Nor is there any dispute that defendant was aware of plaintiff's protected activity. Due to the prior litigation, however, plaintiff is collaterally estopped from setting forth a claim of retaliation based on the protected activities previously litigated, i.e., plaintiff's internal technical complaints regarding the 2008 appointment of Cynthia Kelley and those regarding plaintiff's removal as director of Walter Reuther. Therefore, the protected activity in question is limited to plaintiff filing a complaint with the EEOC in 2008 and the subsequent filing and prosecution of a lawsuit.

As noted, the parties disagree as to whether plaintiff experienced a materially adverse employment action. However, denying a qualified employee a transfer opportunity can constitute a materially adverse employment action element for a retaliation claim. *See Braithwaite v. Dept. of Homeland Sec.*, 473 F. App'x 405, 413 (6th Cir. 2012). Even if the Court adopts defendant's characterization of the CFP Director position as a transfer opportunity, plaintiff satisfies this element because the denial of a transfer opportunity for which he was qualified may "dissuade a reasonable worker from making . . . a charge of discrimination," *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2007), and rises above the level of "petty slights and minor annoyances." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009).

However, plaintiff nonetheless fails to state a prima facie case of retaliation because he cannot establish causation. To establish a causal connection, plaintiff must show that the retaliatory conduct or the "desire to retaliate" was the "but for" causation of the materially adverse employment action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. ___ (2013)

(slip op. at *2, *10, *18). Under this standard, plaintiff must show that defendant implemented the SPR to exclude him from the hiring process. *See id.* at *20. Although the alleged adverse employment action occurred from December 2009 (when the SPR was adopted) through February 2010 (when Holden was hired instead of plaintiff) and plaintiff's prior lawsuit was pending at that time, temporal proximity absent other evidence of retaliatory conduct is generally insufficient to prove a causal connection and plaintiff must present "other indicia of retaliatory conduct." *See Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 596 (6th Cir. 2007). Additional evidence of retaliatory conduct might include specific instances of singling plaintiff out, disparate treatment between plaintiff and similarly situated employees, or retaliatory comments directed toward plaintiff.

Plaintiff alleges that the temporal proximity between the December 14, 2009, approval of the SPR and plaintiff's prior lawsuit before Judge Hood, which lasted from December 11, 2008, until March 2, 2011, coupled with the following two factors, suffice to show causation: (1) defendant seeking approval of the SPR, although it was invalid under the Civil Service Rules and (2) Kelley's participation in the job posting process.[9] Aside from temporal proximity, plaintiff admits to having no additional evidence of retaliatory conduct. Weeks Dep. 72-72, 78-79. In addition, the depositions of defendant's employees, those of the Civil Service staff, and the ERB technical review report demonstrate that defendant's employees did not and could not influence the SPR approval process. Although both defendant's employees and the civil service

---

[9] Plaintiff suggests that Kelley should not have participated in the process of hiring a CFP Director because she had a motive to retaliate against plaintiff for his 2005 complaint resulting in Kelley's removal from her position as a Level 18 State Bureau Administrator. Pl.'s Br. at 16. However, plaintiff is collaterally estopped from bringing claims regarding retaliation of protected activities litigated previously. In addition, plaintiff adduces no evidence that Kelley had such a motive. Nor does plaintiff show that Kelley had significant influence over the approval of the SPR, as plaintiff admits that the Civil Service Commission approved the SPR independently. Pl.'s Br. at 18.

employees knew the SPR was unusual, there had been some prior practice of approving similar SPRs. *See* Cooper Dep. at 18 (noting that previous SPRs had been approved to require a law degree for general counsel positions, although those Level 15-22 positions generally required a bachelor's degree). Plaintiff has failed to demonstrate any unlawful conduct or intent on the part of defendant that could lead a reasonable jury to conclude that the CFP Director position and the SPR were posted to retaliate against plaintiff for engaging in protected activity. Nor has plaintiff contested the factual basis of the SPR's posting as described by its employees or the technical review officer. Since no genuine issue of material fact exists regarding the timing and procedure for approving the SPR and since plaintiff has not offered additional evidence of retaliatory conduct, he has failed to establish a prima facie case of retaliation.

Even if plaintiff had set forth a prima facie case of retaliation, defendant has offered a legitimate, nondiscriminatory explanation for adopting the SPR. Defendant designed the SPR to help prevent patient abuse scandals, reasoning that candidates with clinical experience would better manage hospital-patient relationships. Head Dep. at 12. As SPRs that violated Civil Service Regulation 4.01 had previously been attached to and approved for job postings for general counsel positions, both defendant and the Civil Service Commission had reason to believe that the additional educational standards required by the SPR at issue in this case were legitimate.

Plaintiff asserts that defendant did not pursue this policy in the hiring of Richard Young as hospital director of Walter Reuther or in the promotion of Holden to a Level 18 and therefore these explanations are mere pretext for retaliation. The Court rejects this argument, as defendant had legitimate reasons for hiring Richard Young despite his lack of experience as a psychiatrist, psychologist, or physician and for promoting Holden to a Level 18 position that did not require

14

the aforementioned clinical experience. Richard Young was hired on a temporary, emergency basis on February 19, 2009, nearly ten months before the SPR was approved. Young's tenure was to last no more than 60 days before the position was to be opened for applications. As Young was appointed to a different position that did not have the SPR attached and his appointment occurred prior to the approval of the SPR, his hiring does not demonstrate that defendant's policy of hiring clinicians as hospital directors was pretextual or otherwise not based in fact. After Holden was hired as the CFP Director, she was promoted to a Level 18 State Bureau Administrator position that does not require clinical experience. The promotion did not include any change in responsibilities, as Holden remained CFP Director. Defendant was prohibited from attaching the clinical requirements to Holden's new position because the ERB invalidated the SPR on July 1, 2010, because it was barred by Reg. 4.01, not because its requirements were substantively illegitimate. Plaintiff has failed to show that defendant has decided to abandon clinical experience as a preferred requirement, and the retention and promotion of Holden speaks to defendant's continued valuation of clinical experience for its hospital directors. Further, Head, the official responsible for initiating the policy of preferring clinicians for hospital director positions, was no longer employed by the state at the time of the temporary appointment of Richard Young as director of Walter Reuther. Defendant's proffered explanation for adopting the SPR therefore stands unrebutted.

    For the reasons stated above, the Court concludes that plaintiff has failed to state a prima facie case of race or national origin discrimination or of retaliation. The Court also concludes that even if plaintiff had stated a prima facie case, he has failed to show that defendant's explanation for adopting the SPR or for hiring Holden for the CFP director position is a pretext for discrimination or retaliation. In short, no reasonable jury could find that plaintiff's race,

national origin, or protected Title VII activity were casually connected to defendant's decision to adopt the SPR or to hire Holden. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.

Dated: AUG - 6 2013
Detroit, Michigan

_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE